IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DIANE MARTINEZ and ERIN MARTIN,
individually and on behalf of other similarly situated individuals,

Plaintiffs,

v.                                                                          No. 1:19-cv-00004-JHR-SCY

PROGRESSIVE PREFERRED INSURANCE COMPANY,
PROGRESSIVE CLASSIC INSURANCE COMPANY,
PROGRESSIVE CASUALTY INSURANCE COMPANY,
PROGRESSIVE DIRECT INSURANCE COMPANY,
PROGRESSIVE ADVANCED INSURANCE COMPANY,
PROGRESSIVE SPECIALTY INSURANCE COMPANY and
PROGRESSIVE NORTHERN INSURANCE COMPANY,

Defendants.

## UNOPPOSED MOTION AND BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS SETTLEMENT

The Class Representatives, Diane Martinez and Erin Martin, hereby move the Court pursuant to Federal Rule of Civil Procedure 23(e) for the entry of a Final Order and Judgment, attached herewith as Exhibit 1, which: (1) grants final approval of the proposed Settlement as fair, adequate, and reasonable; (2) approves the form, content, and manner of the Settlement Class Notice; (3) approves attorney's fees and incentive award; and (4) finds there are no objections to the proposed Settlement and that the Settlement is binding as to all Class Members except for the four persons who submitted timely opt-out requests. Defendants, ("Progressive") do not oppose this motion. Defendants deny all liability and any allegations of wrongdoing.

### Litigation and Procedural Background

This lawsuit arises from Plaintiffs' allegation that part of the Underinsured Motorist ("UIM") coverage they purchased from Progressive was illusory because each had an accident and Progressive subtracted the at-fault drivers' liability coverage payments from their respective combined Uninsured

("UM") and UIM coverage limits pursuant to the offset described in *Schmick v. State Farm Mutual Automobile Insurance Co.*, 1985-NMSC-073, 103 N.M. 216, 704 P.2d 1092 (the "*Schmick* Offset").

Ms. Martin carried $25,000 per person in UM/UIM coverage and claims that the entire amount was illusory UIM, while Ms. Martinez carried $75,000 per person in UM/UIM coverage ($25,000 in coverage stacked for three vehicles) and claims that $25,000 of that amount was illusory UIM. Plaintiffs claim those portions of UIM coverage were illusory because each had an accident and Progressive subtracted the at-fault drivers' $25,000 liability coverage payments from their respective UM/UIM coverage limits to pay nothing on Ms. Martin's claim and only $50,000 on Ms. Martinez's claim.

On May 8, 2018, Plaintiffs sued Progressive in the Second Judicial District in the State of Mexico, County of Bernalillo. Progressive timely removed the case to this Court. Plaintiffs asserted nine claims: (1) negligence, (2) violations of New Mexico's Unfair Trade Practices Act, (3) violations of New Mexico's Unfair Insurance Practices Act, (4) policy reformation, (5) breach of the implied duty of good faith and fair dealing, (6) unjust enrichment, (7) negligent misrepresentation, (8) declaratory judgment, and (9) injunctive relief. *See* Second Amended Complaint (Dkt. 17).

On February 1, 2019, Plaintiffs filed an opposed motion to stay this case in light of the certified question in *Crutcher*. On February 8, 2019, Defendants filed their 12(b)(6) motion to dismiss and an alternate motion to certify questions to the NMSC.

On July 8, 2019, this Court granted Plaintiffs' motion to stay and denied Defendants' respective motions.

Ten other lawsuits were also filed around the same time as this one against other insurance carriers. In one of those related cases filed by Plaintiffs' counsel herein—*Crutcher v. Liberty Mut. Ins. Co.*, No. 1:18-cv- 00412-JCH-LF (D.N.M.)—the court certified the following questions to the New Mexico Supreme Court:

> Under N.M. Stat. Ann. § 66-5-301, is underinsured motorist coverage on a policy that offers only minimum UM/UIM limits of $25,000 per person/$50,000 per accident illusory for an insured who sustains more than $25,000 in damages caused by a minimally insured tortfeasor because of the offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, and, if so, may insurers charge a premium for that non-accessible underinsured motorist coverage?

*Crutcher v. Liberty Mut. Ins. Co.*, No. 118CV00412JCHKBM, 2019 WL 12661166, at *4 (D.N.M. Jan. 9, 2019). Once this question was certified, this case and all other active related cases were stayed pending ruling.

On January 25, 2022, the Court lifted the stay following the issuance of the *Crutcher* decision. Dkt. 41. On March 14, 2022, the Parties jointly requested that the Court stay the case pending the Parties' mediation before nationally recognized class action and insurance mediator Rodney Max of Upchurch Watson White & Max. Dkt. 46. The Court granted the stay. Dkt. 49. To further settlement discussions, Progressive agreed to provide Plaintiffs with certain discovery, including data sampling regarding premiums/*Schmick* Offsets and a sampling of claims files.

On June 13, 2022, the Parties, through Rodney Max, engaged in good faith, arm's-length settlement negotiations. The Parties did not reach settlement at this first mediation.

On June 30, 2022, the Parties attended a second mediation with Rodney Max, agreeing on the key terms of the Settlement. The Parties thereafter worked with a nationally recognized settlement administrator to finalize the terms of this Settlement Agreement and the proposed notice exhibits attached hereto.

Plaintiffs, through their counsel, believe that the Settlement confers substantial benefits on the Settlement Class and is in the best interest of the Settlement Class. Plaintiffs, through their counsel, believe that their claims have substantial merit. Nonetheless, Plaintiffs, through their counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Action against Progressive through motions practice, trial, and potential appeals. They

have also considered the uncertain outcome and risks of further litigation, as well as the difficulties and delays inherent in such litigation. Plaintiffs' counsel is experienced in insurance litigation and knowledgeable regarding the relevant claims, remedies, and defenses at issue generally in such litigation and specifically in this Action. Plaintiffs' Counsel has determined that the Settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interest of the Settlement Class.

Progressive continues to deny each and all of Plaintiffs' claims and allegations. Progressive denies all allegations of wrongdoing or liability. However, Progressive has concluded that further litigation would be protracted and expensive. Progressive has considered the uncertainty and risks inherent in any litigation, and Progressive has therefore determined that it is desirable and beneficial that the Action be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

**I.  Final Approval of Settlement, Notice, Plan of Allocation and Attorney Fees and Administrative Costs.**

As demonstrated below, the Settlement is fair, adequate, and reasonable and, therefore, should be finally approved.  Additionally, the Notice to the Class constituted fair and adequate notice and constituted best practicable Notice under the circumstances, satisfying all requirements of due process and Fed. R. Civ. P. 23.

**A.  Final Approval of the Settlement.**

Under Fed. R. Civ. P.  23(e), the trial court should approve a class action settlement under the circumstances set forth below, which are all present here.

In *Wells v. Best Buy, Co.(In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.)*, 997 F.3d 1077, ¶¶ 19-21 (10th Cir. May, 2021), the Tenth Circuit set forth the necessary findings:

4

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;
        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
        (iv)    any agreement required to be identified under Rule 23(e)(3); and

D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D) (emphasis added). This court has further noted four factors for evaluation by a district court:

    (1)    whether the proposed settlement was fairly and honestly negotiated;

    (2)    whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

    (3)    whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

    (4)    the judgment of the parties that the settlement is fair and reasonable.

Examination of each factor above cited supports final approval of this Settlement.

    **1.    The Settlement Was Fairly and Honestly Negotiated.**

The first factor supports final approval, because the Settlement was fairly and honestly negotiated. When, as here, a settlement results from "arm's length negotiations between experienced counsel after significant discovery occurred, the Court may presume the settlement to be fair, adequate, and reasonable." *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *see*

5

*also, Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid."); *Marcus v. Kan. Dept. of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable.")

The Settlement, here, was reached only after years of litigation, multiple mediations and extensive arm's length negotiations between the parties. Other similar cases pursued for years by Plaintiffs' counsel herein generated both formal and informal discovery of insurance company practices which proved helpful in the instant case. The Settlement affords potentially thousands of Class members a first or even a second opportunity to receive UM/UIM benefits for car accidents that might have resulted in serious injuries, for which they might not otherwise have a source of relief or additional relief. Without a Settlement, a Class member might not know of his or her right to assert a UM/UIM Coverage claim, or that a claim previously asserted and was not paid—even if he or she was represented by counsel. This is an enormous benefit to the Class. Settlement class members who were not injured in a car crash have an opportunity to receive a portion of their premiums paid for UM/UIM coverage, to as far back as January 2004. In addition to the benefits provided for class members who sustained injuries the settlement provides the option/opportunity for class members to receive a partial reimbursement of UM/UIM premiums paid. According to the claims administrator's declaration, there were 12 fatalities confirmed by Defense Counsel, where the estates are eligible to receive a total of approximately $462,245 between the 12 fatalities. These automatic payments are separate from any valid and timely claims received by the Claims Administrator through August 10, 2023. See Exhibit 2 attached herewith, Declaration of Eamon Mason, Senior Project Manager, Epiq Class Action & Claims Solutions, Inc.

Additionally, according to the claims administrator, there are currently 188 Settlement Class

Members who have been identified within the Option 1 population in the Class List. The estimated valuation of these Option 1 claims, based on a $25,000 limit for these claims, is $4,700,000. This valuation may increase if additional claims are approved under Option 1 or the limits are higher. Id. In this regard, it should be noted that there are still 17 days in the claim period for claim activity to be added to the already robust amount of claims received.

### 2. Questions of Law and Fact Exist, Making the Outcome of Litigation Uncertain Without Approval of the Settlement.

Questions of law and fact exist such that, absent the Settlement, the outcome of this case would be placed in doubt. "Although it is not the role of the Court at this stage of the litigation to evaluate the merits . . . it is clear that the parties could reasonably conclude that there are questions of law and fact that exist such that they could significantly impact the case if it were litigated." *Lucas*, 234 F.D.R. at 693-94 (citing *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273 at 284 (D. Colo. 1997)).

### 3. The Value of the Immediate Recovery Outweighs the Mere Possibility of Future Relief After Additional Litigation and Expense.

Because the immediate value of the Settlement benefits outweighs the complexity, uncertainty, expense, and likely duration of further litigation and appeals, the third factor also supports final approval of the proposed Settlement. "The class will be well- compensated . . . and is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried and all appeals are exhausted." *Childs v. Unified Life Ins. Co.*, 2011 WL 6016486, at *13 (N.D. Okla. 2011). The Settlement is a significant and meaningful recovery for the Class and represents a very substantial percentage of the amount that could be recovered if litigated to the conclusion. Very few, if any, members of the class either did or would file individual litigation claims, especially without Plaintiffs' counsel's successful prosecution of the parallel case, *Crutcher v. Lib. Mut. et. al.*, 18-cv-00412-JH, see also *Crutcher*

7

*v. Lib. Mut. et. al.*, 2022-NMSC-001, after which the New Mexico Supreme Court found that a parallel carrier could be liable for policy language which misrepresented the impact of the *Schmick* offset, or failed to adequately disclose it, the legal predicate of the same claims made in this case. As a result, and benefit of what happened in *Crutcher*, almost all auto insurance carriers in New Mexico sent out notices to their insureds attempting to rectify the issues identified by the New Mexico Supreme Court and begin a dialogue about the costs of, and limitations or exclusions to, underinsured motorist benefits.

    **4.    The Settling Parties Agree the Proposed Settlement Is Fair, Reasonable and Adequate.**

Finally, the Settling Parties and their Counsel have signed the Settlement, indicating their belief that the Settlement is fair, adequate, and reasonable. "Counsels' judgment as the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 (quoting *Marcus*, 209 F. Supp. 2d at 1183). "[T]he Court should . . . 'defer to the judgment of experienced counsel who has competently evaluated the strength of his proof.'" *Johnson v. City of Tulsa*, No. 94-CV-39-H(M), 2003 WL 24015151. *11 (N.D. Okla. May 13, 2003). As such, the fourth factor – that the settling parties agree the settlement is fair, adequate, and reasonable – supports final approval. Additionally, pursuant to the Parties' Agreement, this motion seeks the appointment of Raynard Struck as the Neutral Evaluator in this matter to perform the functions of the neutral evaluator set forth in the Parties' Settlement Agreement, which will be to resolve, in binding fashion, any disputes over the required reevaluation of claims submitted under the claim reevaluation option provided to the class. Should Mr. Struck not be able to perform these services, the parties may meet and confer to select an alternative.

    **5.    The Class Overwhelmingly Supports the Settlement.**

The lack of any objections and the recognition of only 4 opt-outs representing approximately

4/7,318 of a percent interest in the Class also supports the Settlement. *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3rd Cir. 1990) (Objections by only 10 percent of the class "strongly favors settlement"); *see also, Mohammed v. Ells*, 2014 WL 4212687 at *4 (D. Colo. August 26, 2014) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2nd Cir. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-87 (2nd Cir. 2000) (Where 27,883 notices were sent to class members, but only 72 class members requested exclusion from the settlement and only 18 class members objected, court stated that "this small number of objections weigh[s] in favor of the settlement"). Here, only 4 Class Members submitted timely opt out request and no objections were received after 346,556 Notices were initially mailed and 287,438 emails initially delivered. See Exhibit 2. 7,318 Valid Claim Forms were received and are still being received and processed by the claims administrator, and there are still approximately 17 days remaining for claims to be filed. Id. Therefore, the Settlement has received overwhelming support from the Class.

B. **Final Approval of the Form, Content, and Manner of Notice to the Class.**

The form, content, and manner of the Notice to the Class also should be finally approved. Fed. R. Civ. P. 23(e)(1) requires that notice of a settlement be "in a reasonable manner to all class members . . .".

In terms of content, a settlement notice need be reasonably calculated, under all of the circumstances, to apprise the interested parties of the pendency of the proposed settlement and to afford them an opportunity to present their objections. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "The hallmark of the notice inquiry is reasonableness." *Lucas*, 234 F.R.D. at 693-96.

In the Preliminary Approval Order [Doc. 66], the Court approved the Notice of Proposed

9

Settlement of Class Action (the "Notice").  The Court originally appointed Epiq as Class Administrator.  Doc. 66.  Epiq was the entity retained by the Parties to act as the administrator in connection with this proposed settlement and as the authorized agent to effect mailing of the Notice of Class Action and Proposed Settlement (the "Notice") to members of the Class, and to allocate and disburse funds.  All names and addresses of the Class were provided by the Defendant.  Pursuant to the Preliminary Approval Order entered by this Court on March 3, 2023 [Doc. 66], the Class Administrator emailed and mailed copies of the Notice by first-class mail to each of the potential Class Members.  The Class Notice was mailed as directed, see Exhibit 2.  New addresses or new names and addresses were found for several Members or potential Members of the Class through the efforts described in the declaration. Id.  The potential Class List was updated with these new addresses.

The efforts of Class Counsel to locate Class Members, or potential Class Members, who were subject to a "returned envelope" Notice can be described as a "skip trace" procedure.  The Class Member List was updated with any new addresses and names so determined.  New Notices were then mailed to all newly identified, potential Class Members using the new addresses.  As the Administrator's Declaration confirms, the reach of this Notice was extremely broad, and there were only a minuscule number of undeliverable notices. Id.

### C. Final Approval of Attorney Fees and Administrative Costs and Class Representative Incentive Awards.

This issue is presented in other pleadings before the Court.  *See* Plaintiff's Motion for Attorney Fees and Incentive Award and Memorandum in Support Thereof. No Class Member objected to the proposed attorney's fees, litigation expenses, and incentive awards as stated in the Notice.  For all reasons set forth herein, Class Counsel moves the Court to approve and award the requested attorney's fees, and class representatives' incentive fees.

## II.    Conclusion.

For the foregoing reasons, and pursuant to the findings recently set forth in *Wells v. Best Buy, Co.*, 997 F.3d 1077, ¶¶ 19-21 (10th Cir. May, 2021), the Class Representatives, Diane Martinez and Erin Martin, respectfully request the Court enter a Final Order and Judgment, which (1) grants final approval of the proposed Settlement as fair, adequate and reasonable; (2) approves the form, content, and manner of the Settlement Class Notice; (3) approves attorney's fees and named Plaintiffs' incentive award;; and (4) grants any other relief the Court deems just and proper.

Respectfully submitted,

/s/ *Kedar Bhasker*
Kedar Bhasker
BHASKER LAW
2741 Indian School Rd. NE
Albuquerque, NM 87106
Phone: 505 407-2088
Fax: 505 709-3279
Kedar@bhaskerlaw.com

Corbin Hildebrandt
CORBIN HILDEBRANDT P.C.
2741 Indian School Rd. NE
Albuquerque, NM 87106
Phone: 505 998-6626
Fax: 505 336-7743
corbin@hildebrandtlawnm.com

Geoffrey Romero
LAW OFFICES OF GEOFFREY R. ROMERO
4801 All Saints Rd. NW Ste. A
Albuquerque, NM 87120
(505) 247-3338
geoff@geoffromerolaw.com

*Counsel for the Plaintiff*